1  ROBBINS GELLER RUDMAN
     & DOWD LLP
2  BONNY E. SWEENEY (176174)
   CARMEN A. MEDICI (248417)
3  655 West Broadway, Suite 1900
   San Diego, CA 92101
4  Telephone: 619/231-1058
   619/231-7423 (fax)
5  bonnys@rgrdlaw.com
   cmedici@rgrdlaw.com
6     – and –
   SAMUEL H. RUDMAN
7  MARK S. REICH
   58 South Service Road, Suite 200
8  Melville, NY 11747
   Telephone: 631/367-7100
9  631/367-1173 (fax)
   srudman@rgrdlaw.com
10 mreich@rgrdlaw.com

11 Attorneys for Plaintiff

12                UNITED STATES DISTRICT COURT

13             CENTRAL DISTRICT OF CALIFORNIA

14                    WESTERN DIVISION

15 E. M. BROWN, INC., On Behalf of      ) No. CV10 7437
   Itself and All Others Similarly Situated, )
16                                        ) No.
                    Plaintiff,            )
17                                        ) CLASS ACTION
           vs.                            )
18                                        ) COMPLAINT FOR VIOLATION OF
   FUTURE FOAM, INC., HICKORY            ) §1 OF THE SHERMAN ACT
19 SPRINGS MANUFACTURING                 )
   COMPANY, VALLE FOAM                    )
20 INDUSTRIES, INC., DOMFOAM             )
   INTERNATIONAL, INC.,                   )
21 CARPENTER CO., WOODBRIDGE             )
   FOAM CORPORATION, FLEXIBLE            )
22 FOAM PRODUCTS, INC.,                  )
   SCOTTDEL, INC., FXI FOAMEX            )
23 INNOVATIONS, INC. and                 )
   VITAFOAM, INC.,                        )
24                                        )
                    Defendants.           ) DEMAND FOR JURY TRIAL
25 _____ )

26

27

28

Plaintiff E. M. Brown, Inc. a direct purchaser of goods from one or more defendants, brings this action on behalf of itself and on behalf of a class consisting of all persons and entities that purchased Flexible Slab Polyurethane Foam directly from a defendant or a co-conspirator (the "Class"). Plaintiff makes the allegations in this Complaint on information and belief, except as to the allegations pertaining to plaintiff, which are based on personal knowledge.

## JURISDICTION AND VENUE

1.     Plaintiff brings this action pursuant to §1 of the Sherman Act, 15 U.S.C. §1, and §§4 and 16 of the Clayton Act, 15 U.S.C. §§15 and 26, to recover treble damages and costs of suit, including reasonable attorneys' fees, against defendants for the antitrust injuries sustained by plaintiff and members of the Class.

2.     Plaintiff also seeks injunctive relief against defendants to prevent them from further violations of §1 of the Sherman Act, 15 U.S.C. §1, and pursuant to §16 of the Clayton Act, 15 U.S.C. §26.

3.     Jurisdiction in this Court is proper under 28 U.S.C. §§1331 and 1337, and §§4(a) and 16 of the Clayton Act, 15 U.S.C. §§15(a) and 26.

4.     Venue is proper in this Judicial District pursuant to 15 U.S.C. §§15(a) and 22 and 28 U.S.C. §1391(b), (c) and (d) because during the Class Period (as defined below), defendants resided, transacted business, were found and/or had agents in this District, and a substantial portion of the affected interstate trade and commerce described below has been carried out in this District.

5.     This Court has personal jurisdiction over each defendant because, *inter alia*, each defendant: (a) transacted business throughout the United States, including in this District; (b) sold Flexible Slab Polyurethane Foam throughout the United States, including in this District; (c) had substantial contacts with the United States, including in this District; and/or (d) was engaged in an illegal price-fixing conspiracy that was directed at and had the intended effect of causing injury to persons residing

- 1 -

1 in, located in or doing business throughout the United States, including this District.

2 Further jurisdictional contacts are alleged below.

3                                    **NATURE OF ACTION**

4          6.     Flexible Slab Polyurethane Foam is generally used to offer comfort as

5 cushioning material.  It is used in a variety of products, including mattresses, carpet

6 cushion, pillows, sofas, automotive seating and dashboards, insulation, garments,

7 upholstery and footwear.

8          7.     Defendants manufacture Flexible Slab Polyurethane Foam. Collectively,

9 defendants sell billions of dollars of Flexible Slab Polyurethane Foam in the United

10 States every year.

11         8.     On July 27, 2010, the European Commission and the FBI conducted

12 surprise raids of the offices of several Polyurethane Foam manufacturers as part of a

13 probe into possible antitrust violations.

14         9.     Although the FBI has yet to make any formal statements, it confirmed

15 that agents raided Virginia-based Flexible Slab Polyurethane Foam maker, defendant

16 Carpenter, Co.  Through its attorney, Carpenter, Co. acknowledged that it was raided

17 as a part of a multijurisdictional investigation of a number of polyurethane foam

18 manufacturers.

19         10.    The European Commission stated that "starting on 27 July 2010,

20 Commission officials carried out unannounced inspections at the premises of

21 companies active in the polyurethane foam sector in several Member States.  The

22 Commission has reason to believe that the companies concerned may have violated

23 European antitrust rules that prohibit cartels and restrictive business practices."

24 Belgian bedding and insulation maker Recticel SA confirmed that their Austrian,

25 Belgian and United Kingdom offices were targeted by the raids.

26         11.    Defendants are under investigation because they explicitly agreed with

27 each other to a conspiracy, the intent of which was to raise the prices of Flexible Slab

28 Polyurethane Foam above competitive levels.  In furtherance of their conspiracy, they

1    agreed to set prices and allocate customers. Despite flat or decreasing demand, the

2    price for Flexible Slab Polyurethane Foam increased during the Class Period. As a

3    result of defendants' unlawful conduct, plaintiff and the Class paid supracompetitive

4    prices for Flexible Slab Polyurethane Foam and have suffered injury to their business

5    and/or property.

6                                          **PARTIES**

7         12.    Plaintiff E. M. Brown, Inc. ("E. M. Brown" or "plaintiff") is a New York

8    corporation with its principal place of business in the Bronx, New York. During the

9    Class Period, E. M. Brown purchased Flexible Slab Polyurethane Foam directly from

10   one or more of the defendants.

11        13.    Defendant Future Foam, Inc. ("Future Foam") is an Iowa-based

12   corporation headquartered at 1610 Avenue N, Council Bluffs, IA 51501. Future Foam

13   operates a plant in Fullerton, California and has two subsidiaries in California,

14   American Poly-Foam Co. Ltd., located in Hayward, California and Foamcraft, located

15   in Fullerton, California. During the Class Period, Future Foam, by itself or through

16   subsidiaries, manufactured, marketed and/or sold Flexible Slab Polyurethane Foam

17   throughout this District and the United States.

18        14.    Defendant Hickory Springs Manufacturing Company ("Hickory

19   Springs") is a North Carolina-based corporation headquartered at 235 2nd Ave., NW,

20   Hickory, NC 28603. Hickory Springs has a regional sales office located at 4542 East

21   Dunham Street, Los Angeles, CA 90091. During the Class Period, Hickory Springs,

22   by itself or through its subsidiaries, manufactured, marketed and/or sold Flexible Slab

23   Polyurethane Foam throughout this District and the United States.

24        15.    Defendant Hickory Springs holds itself out as one of the nation's largest

25   integrated components manufacturers and suppliers for the furniture and bedding

26   industries with more than 60 operating facilities in the United States and throughout

27   the world. With more than 160 flexible polyurethane foam formulations, Hickory

28   Springs is one of the United States' largest producers of foam.

16.   Defendant Valle Foam Industries Inc. ("Valle Foam") is a Canadian corporation headquartered at 4 West Drive, Brampton, Ontario, L6T 2H7. Valle Foam has distribution offices located at 2637 North Purdue Ave., Fresno, CA 93727. During the Class Period, Valle Foam, by itself or through its subsidiaries, manufactured, marketed and/or sold Flexible Slab Polyurethane Foam throughout this District and the United States.

17.   Defendant Domfoam International Inc. ("Domfoam") is a Canadian corporation headquartered at 8785 Langelier Blvd., Montreal, Quebec, H1P 2C9. During the Class Period, Domfoam, by itself or through its subsidiaries, manufactured, marketed and/or sold Flexible Slab Polyurethane Foam throughout this District and the United States.

18.   Defendant Domfoam holds itself out as Canada's leading and most diversified manufacturer of Flexible Slab Polyurethane Foam.

19.   Defendant Carpenter Co. ("Carpenter") is a Virginia-based corporation headquartered at 5016 Monument Ave., Richmond, VA 23230. Carpenter has offices in about 30 locations in the United States, including in Lathrop, California and Riverside, California. During the Class Period, Carpenter, by itself or through its subsidiaries, manufactured, marketed and/or sold Flexible Slab Polyurethane Foam throughout this District and the United States.

20.   Carpenter holds itself out as the largest manufacturer of comfort cushioning in the world.

21.   Defendant Woodbridge Foam Corporation ("Woodbridge") is a Canadian corporation headquartered at 4240 Sherwoodtowne Blvd., Mississauga, Ontario, L4Z 2G6. During the Class Period, Woodbridge, by itself or through its subsidiaries, manufactured, marketed and/or sold Flexible Slab Polyurethane Foam throughout this District and the United States.

22.   Woodbridge has over 8,000 employees with more than 60 facilities throughout North and South America, Europe and Asia Pacific.

- 4 -

23.    Defendant Flexible Foam Products, Inc. ("Flexible Foam") is an Ohio-based corporation headquartered at 200 East North Street, Spencerville, OH 45887. During the Class Period, Flexible Foam, by itself or through its subsidiaries, manufactured, marketed and/or sold Flexible Slab Polyurethane Foam throughout this District and the United States.  In April 2006, Flexible Foam purchased defendant Vitafoam, Inc.

24.    Flexible Foam serves customers coast-to-coast and in over 15 countries, providing polyurethane foam products for a variety of industries including bedding, furniture, packaging, novelty, consumer products and automotive applications.

25.    Defendant Scottdel, Inc. ("Scottdel") is an Ohio-based corporation headquartered at 400 Church St., Swanton, OH 43558.  Scottdel specializes in carpet cushion.   During the Class Period, Scottdel, by itself or through subsidiaries, manufactured, marketed and/or sold Flexible Slab Polyurethane Foam throughout this District and the United States.

26.    Defendant FXI Foamex Innovations, Inc. ("Foamex") f/k/a Foamex International Inc., is a Pennsylvania-based corporation headquartered at 1400 Providence Rd., Suite 2000, Media, PA 10963.  Foamex has plants in San Leandro, Orange and Compton, California.  During the Class Period, Foamex, by itself or through subsidiaries, manufactured, marketed and/or sold Flexible Slab Polyurethane Foam throughout this District and the United States.

27.    Foamex holds itself out as the leading producer of innovation for the home, healthcare, electronics, industrial, personal care and transportation markets.  At times during the class period, Foamex was the largest maker of polyurethane foam used in carpets and furniture.

28.    Defendant Vitafoam, Inc. ("Vitafoam") was a North Carolina-based corporation headquartered at 2222 Surrett Drive Street, High Point, NC 27263.  It was purchased by defendant Flexible Foam in April 2006.  During the Class Period,

Vitafoam, by itself or through subsidiaries, manufactured, marketed and/or sold Flexible Slab Polyurethane Foam throughout this District and the United States.

29.     Hickory Springs, Valle Foam, Domfoam, Carpenter, Woodbridge, Flexible Foam, Scottdel, Foamex, Future Foam and Vitaform are collectively referred to as ("defendants").

## CO-CONSPIRATORS

30.     Various other persons, firms, corporations and entities have participated with defendants as unnamed co-conspirators in the violations and conspiracy alleged in this Complaint.  In order to engage in the offenses alleged, these co-conspirators have performed acts and made statements in furtherance of the defendants' antitrust violations.

## CLASS DEFINITION

31.     The Class consists of all persons or entities that purchased Flexible Slab Polyurethane Foam in the United States directly from defendants or defendants' co-conspirators from at least November 1, 2005 until the effects of the anticompetitive behavior cease (the "Class Period").  Excluded from the Class are United States government entities and instrumentalities of the United States government, defendants, their co-conspirators and their parents, subsidiaries and affiliates.

## CLASS ALLEGATIONS

32.     Plaintiff does not know the exact size of the proposed Class as that information is in control of the defendants, but plaintiff believes there are at least thousands of Class members located throughout the United States, making the Class so large and geographically diverse that joinder is impracticable.

33.     Defendants' anticompetitive conduct has imposed a common antitrust injury on members of the Class.

34.     Defendants have acted, and refused to act, on grounds generally applicable to the Class, which makes final injunctive relief with respect to the Class as a whole appropriate.

35.    Plaintiff is a member of the Class and plaintiff's claims are typical of other members of the Class who likewise sustained antitrust injury and were damaged through defendants' actions.

36.    Plaintiff will fairly and adequately protect the interest of the Class. Plaintiff purchased Flexible Slab Polyurethane Foam from defendants and has a common and non-antagonistic interest in recovering damages caused by defendants' anticompetitive conduct and in enjoining and deterring future unlawful activity in the Flexible Slab Polyurethane Foam market.

37.    Plaintiff has retained counsel experienced in antitrust and other complex class action litigation.

38.    Defendants' anticompetitive conduct has uniformly affected plaintiff and members of the Class.  Common questions of law and fact will predominate over individual questions of law and fact.  Among questions of law and fact common to the Class are the following:

(a)    Whether defendants and others combined, conspired or contracted to fix or set Flexible Slab Polyurethane Foam prices at artificially high levels;

(b)    Whether defendants and others combined, conspired or contracted to allocate customers and markets;

(c)    The dates and formation of this illegal combination, contract, conspiracy or agreement;

(d)    The identities of the participants in the illegal combination, contract, conspiracy or agreement;

(e)    The manner and means of the conspiracy;

(f)    Whether, and to what extent, defendants' conduct violated §1 of the Sherman Act;

(g)    Whether, and to what extent, defendants and their co-conspirators fraudulently concealed their illegal combination, contract, conspiracy and other antitrust violations;

1        (h)    Whether Class members have suffered injury to their business and

2  property as a result of defendants' unlawful conduct, including the degree to which the

3  prices paid for by the Class for Flexible Slab Polyurethane Foam were higher than

4  those that would have been paid in a market free from illegal combination, contract,

5  conspiracy and other antitrust violations; and

6        (i)    The appropriateness of injunctive relief to restrain future

7  violations.

8       39.    A class action is superior to other available methods for the fair and

9  efficient adjudication of this controversy. Class treatment will permit a large number

10  of similarly situated persons and entities to adjudicate their common claims in a single

11  forum simultaneously, efficiently and without duplication of effort and expense that

12  numerous individual actions would engender. Prosecution of separate actions by

13  individual plaintiffs would create a risk of inconsistent or varying adjudication. The

14  proposed Class presents no difficulties of management that would preclude its

15  maintenance as a class action. No superior alternative exists for the fair and efficient

16  adjudication of this controversy.

17                **INTERSTATE TRADE AND COMMERCE**

18       40.    Defendants and their co-conspirators sell Flexible Slab Polyurethane

19  Foam in the United States.

20       41.    During all or part of the Class Period, the conduct of defendants and their

21  co-conspirators has taken place in and/or substantially affected interstate trade and

22  commerce of the United States.

23                     **FACTUAL ALLEGATIONS**

24  **The Flexible Slab Polyurethane**
**Foam Market and Industry Background**

25

26       42.    Flexible Slab Polyurethane Foam is a man-made plastic material that can

27  exist in numerous states and is used in a large number of diversified applications,

28

1    including mattresses, bedding, carpets, upholstered furniture, automobile seat

2    cushions, insulation and packaging.

3        43.    Polyurethane foam can be either "flexible" or "rigid." Flexible Slab

4    Polyurethane Foam is typified by open cells which make the end product soft, light,

5    resilient and breathable, and therefore ideal cushioning material for mattresses,

6    beddings, furniture, and carpets. Rigid polyurethane foam has closed cells which

7    translate to strong insulative properties, making it ideal for thermal insulation and

8    application in roofing, wall insulation and appliances.

9        44.    To make Flexible Slab Polyurethane Foam, raw materials, including

10   polyols, isocyanates, additives and carbon dioxide, are held in stainless steel tanks,

11   where they are agitated to remain fluid and heat exchangers adjust their temperatures

12   to the levels that will allow them to react with each other. The materials are then

13   pumped into pipes where they join in a chemical reaction to form polyurethane, which

14   is then dispensed onto huge conveyor belts. As the polyurethane is dispensed, it is

15   mixed with carbon dioxide which causes it to rise, like bread. Rolls of baking paper

16   guide the block of foam known as the "bun" as it continues to expand. Catalysts and

17   surfactants can be added to boost the reactions and control the foaming process when

18   making either rigid or flexible Polyurethane Foam. A wide range of additives,

19   including stabilizers, colorants, dyes, fire retardants and fungicides may be added to

20   meet specific performance demands.

21       45.    The chemical mixture is poured onto a moving conveyer with sides from

22   3 to 4 feet high where it reacts and expands into a slab. The continuous slab is then

23   cut, stored and allowed to cure for up to 24 hours, at which point it undergoes

24   fabrication into useful shapes for a wide range of applications. This method is called

25   the "slabstock" production process, and it is used to manufacture most foam for

26   furniture, cushioning, carpet cushion and bedding.

27       46.    Flexible Slab Polyurethane Foam is widely used for its qualities: it is

28   durable, safe, lightweight, resilient, quiet, virtually odorless and resistant to mildew

and other triggers of common allergies.  In furniture and bedding applications, there are few substitutes for Flexible Slab Polyurethane Foam.  According to the Polyester Foam Association, "short staple polyester fiber is often used instead of FPF [Flexible Polyurethane Foam], as is cotton, but both alternative materials have poor height recovery characteristics after compression.  Steel springs also recover well but must be insulated from the user with some type of cushioning material.  Comparing FPF to alternative materials in the areas of economics, comfort potential, ease of use, and durability, there is not an acceptable substitute for FPF."

**Characteristics of the Flexible Slab Polyurethane
Foam Industry Made It Ripe for Collusion**

47.     The Flexible Slab Polyurethane Foam industry has several characteristics that facilitate a conspiracy, including but not limited to: (1) high market concentration; (2) economic barriers to entry; (3) commoditization and standardization; (4) inelasticity of demand; and (5) participation in trade and business associations.

**High Market Concentration in the
Flexible Slab Polyurethane Foam Industry**

48.     During the Class Period, the Flexible Slab Polyurethane Foam industry was dominated by relatively few companies that marketed, sold and distributed those products throughout the United States.  For example, in 2004, the Herfindahl-Hirschman Index ("HHI"), a standard measure of concentrations for the Flexible Slab Polyurethane Foam market, was 1,896, which at the time would have been considered highly concentrated by the Federal antitrust enforcement agencies.[1]

49.     During this time, the named defendants were responsible for production of approximately 89% of the output share in the Flexible Slab Polyurethane Foam market.  At the same time, none of the defendants had a market share that would make

---

[1]     HHI is calculated by squaring the market share of each firm competing in a market, and then summing the resulting numbers.  Under the newly released 2010 horizontal merger guidelines, an HHI of 1,896 would be considered Moderately Concentrated.  *See* http://www.ftc.gov/os/2010/08/100819hmg.pdf.

it economically feasible to charge supracompetitive prices absent a collective agreement to conspire and fix the price of Flexible Slab Polyurethane Foam. This level of concentration provides an environment in which the potential benefits of collusion are larger than in a more concentrated market. However, the number of firms needed to cartelize the vast majority of industry output in Flexible Slab Polyurethane Foam is manageable.

50.     On information and belief, defendants' collective dominance and control over the Flexible Slab Polyurethane Foam market motivated them to enter into conspiratorial agreements and facilitated their ability to implement their conspiracy to fix the price of Flexible Slab Polyurethane Foam.

**Economic Barriers to Entry**

51.     There are significant manufacturing and financial barriers to entry in the Flexible Slab Polyurethane Foam industry. Due to the wholesale nature of purchaser demand for Flexible Slab Polyurethane Foam and the impact of economies of scale, competition in the polyurethane foam market requires the investment of millions of dollars on manufacturing, technology, transportation, workforce and other overhead associated with the industry. These barriers to entry have made it extremely difficult for smaller manufacturers to compete with defendants and have facilitated the dominance of defendants over the industry.

52.     Therefore, the financial structure of the Flexible Slab Polyurethane Foam industry allowed defendants to implement their antitrust conspiracy by eliminating competition and artificially stabilizing the prices of the Flexible Slab Polyurethane Foam without losing market share.

**Commoditization and Interchangeability
of Flexible Slab Polyurethane Foam**

53.     A "commodity product" is characterized as a product that is readily interchangeable and for which competition is primarily driven by price rather than other market pressures, such as branding and marketing. The mass production and

1 interchangeability of commodity products results not only in pressure for competitors
2 to enter into conspiracies to fix and maintain prices, but serves as a mechanism to
3 successfully adopt and implement such conspiracies.

4     54.    As stated above, Flexible Slab Polyurethane Foam is a homogeneous
5 commodity product produced via the generic "slabstock" manufacturing process. As
6 such, the Flexible Slab Polyurethane Foam supplied by one producer is
7 interchangeable with the product supplied by other producers.

8     55.    Accordingly, Flexible Slab Polyurethane Foam customers make purchase
9 decisions based largely, if not entirely, on price. This commoditization and
10 interchangeability of Flexible Slab Polyurethane Foam facilitated defendants'
11 conspiracy by making coordination on price much simpler than if defendants had
12 numerous distinct products with varying features.

13 **Inelasticity of Demand**

14     56.    "Inelastic demand" is an economic term that is used to describe a
15 situation in which the supply and demand for a good are unaffected when the price of
16 that good or service changes. When the demand for a product is inelastic, it ensures
17 that the economic benefits of a collusive agreement to raise prices will not be
18 dissipated by a resulting stark drop in the quantity demanded at the new, higher price.

19     57.    The polyurethane foam industry has a number of economic factors and
20 conditions that make its price "inelastic." Specifically, Flexible Slab Polyurethane
21 Foam presents an array of qualities and characteristics including light weight,
22 durability, breathability and strong recovery that ensure it cannot be easily replaced by
23 a competing product. The inelastic nature of demand for Flexible Slab Polyurethane
24 Foam made the market susceptible to increased profits as a result of collusion and
25 allowed defendants to implement their conspiracy without jeopardizing their output.

26 **Participation in Trade and Business Associations**

27     58.    On information and belief, during the Class Period, defendants were
28 members in a number of business and trade associations serving the Flexible Slab

Polyurethane Foam industry, including the Polyurethane Foam Association, Alliance of Flexible Polyurethane Foam and Carpet Cushion Council.

59.     The Polyurethane Foam Association was founded in 1980 and its members produce 70% of the flexible polyurethane foam in the United States.  The Polyurethane Foam Association states its mission, "is to educate customers and other groups about flexible polyurethane foam (FPF) and to promote its use in manufactured and industrial products."

60.     The Alliance of Flexible Polyurethane Foam was established as a joint program by the Center for the Polyurethanes Industry of the American Chemistry Council and the Polyurethane Foam Associations.   The Alliance of Flexible Polyurethane Foam aims to educate potential customers regarding the benefits of flexible polyurethane foam in furniture and carpet padding applications.

61.     The Carpet Cushion Council is a trade association that specializes in the education and representations of suppliers in the carpet padding segment of the Flexible Slab Polyurethane Foam industry.  Its members include defendants Scottdel, Foamex, Future Foam, Valle Foam and Vitafoam.

62.     On information and belief, participation in these aforementioned trade associations provided defendants with the opportunity to conduct conspiratorial meetings. Plaintiff further alleges that defendants' in-person collusive pricing discussions frequently took place at trade association meetings.

**Defendants' Prices Cannot be**
**Explained by Market Fundamentals**

63.     Prior to the Class Period, the Flexible Slab Polyurethane Foam industry was characterized by stable pricing. Between January 1996 through October 2005, the price of Flexible Slab Polyurethane Foam remained stable, even in the face of moderate fluctuations in the cost of inputs.

64.     However, during the Class Period, this stability gave way to remarkable increases in prices for Flexible Slab Polyurethane Foam which reached unprecedented

1    levels.  Between October and November 2005, prices of Flexible Slab Polyurethane
2    Foam furniture and furnishings increased by 41%.

3        65.    Even after input costs stabilized, defendants' prices for Flexible Slab
4    Polyurethane Foam again increased sharply several times during the Class Period –
5    from April 2006 through October 2006, from April 2008 through August 2008, and
6    from May 2009 through at least early 2010.

7        66.    Moreover, during the Class Period, demand for Flexible Slab
8    Polyurethane Foam was flat or decreasing, which should have resulted in lower, not
9    higher, prices.  By 2009, defendants faced a market that was subject to declining input
10   prices and reduced demand for Flexible Slab Polyurethane Foam.   Nevertheless,
11   defendants' prices defied conventional market behavior, and actually increased during
12   the second half of 2009.

13       67.    These sharp price increases cannot be explained by changes in raw
14   material prices, shifts in demand or conscious parallel pricing.  While the cost of
15   certain inputs increased during the Class Period, the amount of those increases was not
16   sufficient to support the very large price increases for Flexible Slab Polyurethane
17   Foam.

18       68.    Defendants coordinated price increase announcements to effectuate their
19   conspiracy. For example, defendants announced price increases of 13.5% in 2007, at
20   least 20% in 2008, 20% in 2009 and 20% in 2010.  By reason of these price increase
21   announcements, defendants were able to implement price increases and/or stabilize
22   the prices in the market for Flexible Slab Polyurethane Foam.

23       69.    Upon information and belief, these coordinated price increases and
24   irrational price movements were the result of conspiratorial discussions regarding
25   price-fixing and market allocation of Flexible Slab Polyurethane Foam between
26   defendants and their co-conspirators.  These collusive discussions among competitors
27   were conducted primarily by means of telephone, electronic mail and in-person
28

1   meetings and resulted in understandings and agreements on most price increases for

2   Flexible Slab Polyurethane Foam going back to at least November 2005.

3   **Government Antitrust Investigations**

4        70.    On or about July 27, 2010, news organizations reported that FBI agents

5   raided the Virginia offices of defendant Carpenter in connection with its potential

6   involvement in a world-wide price-fixing and market allocation conspiracy in the

7   market for polyurethane foam. News services reported that FBI agents took boxes and

8   bags of information out of the building and forced several of its offices to close.

9   Carpenter confirmed the investigation, stating: "In connection with a multi-

10   jurisdiction investigation of the pricing practices to Polyurethane Foam products, the

11   U.S. government has required that manufacturers of polyurethane foam, including

12   Carpenter Co., produce information and documents.  Carpenter Co. is being fully

13   responsive and cooperative with the government to facilitate their review."

14        71.    The raid conducted in Virginia was part of a coordinated worldwide

15   probe in the Polyurethane Foam market conducted by United States, European Union

16   and Canadian competition regulators.

17        72.    On August 3, 2010, the European Commission ("EC") confirmed in a

18   press release that on July 27, 2010, the EC carried out unannounced inspections at the

19   premises of producers of Polyurethane Foam for potential violations of European

20   Union ("EU") Treaty Rules, which, *inter alia*, prohibit certain anticompetitive

21   practices. The inspections were carried out in several EU member states, including

22   Belgium, the United Kingdom and Austria.

23                  **DEFENDANTS' ANTITRUST VIOLATIONS**

24        73.    Beginning at least as early as November 1, 2005 and continuing to the

25   present, the exact dates unknown to plaintiff, defendants and their co-conspirators

26   engaged in a continuing agreement, understanding and conspiracy in restraint of trade

27   to artificially raise, fix, maintain and/or stabilize the price for Polyurethane Foam in

28   the United States.

74.     In formulating and implementing their unlawful contract, combination or conspiracy, defendants and their co-conspirators engaged in anticompetitive activities, the purpose and effect of which were to artificially raise, fix maintain and/or stabilize the price of Flexible Slab Polyurethane Foam in the United States.  These activities include the following:

(a)     Defendants participated in meetings and/or communications to discuss the pricing of Polyurethane Foam;

(b)     Defendants agreed during those meetings and/or communications to agree to charge specified prices and/or otherwise maintain prices of Flexible Slab Polyurethane Foam in the United States; and

(c)     Defendants implemented, adhered to and oversaw the agreements they reached.

75.     Defendants and their co-conspirators engaged in the activities described above for the purpose of effectuating the unlawful agreements described in this Complaint.

76.     During the Class Period, plaintiff and members of the Class purchased Flexible Slab Polyurethane Foam from defendants, their subsidiaries or affiliates or their co-conspirators at inflated and supracompetitive prices.

77.     As a result of defendants' unlawful conduct, plaintiff and other members for the Class have been injured in their business and property in that they have paid more for Flexible Slab Polyurethane Foam then they would have paid in a competitive market.

78.     The unlawful contract, combination or conspiracy has had the following effects, among others:

(a)     Price competition in the markets for Flexible Slab Polyurethane Foam has been artificially restrained;

(b)   Prices for Flexible Slab Polyurethane Foam sold by defendants have been raised, fixed, maintained or stabilized at artificially high and supracompetitive prices; and

(c)   Purchasers of Flexible Slab Polyurethane Foam from defendants have been deprived of the benefits of free and open competition in the markets for Flexible Slab Polyurethane Foam.

79.   Defendants' contract, combination or conspiracy constitutes an unreasonable restraint on interstate trade and commerce in violation of §1 of the Sherman Act.

80.   The aforementioned anticompetitive effects of defendants' conduct on competition in the relevant market outweigh any conceivable precompetitive benefits.

## FRAUDULENT CONCEALMENT IN FURTHERANCE OF THE CONSPIRACY

81.   Plaintiff had no knowledge of the anticompetitive conduct alleged in this Complaint or of any facts that might have led to its discovery in the exercise of reasonable diligence, prior to July 27, 2010, when it was disclosed for the first time that there was a worldwide investigation into possible antitrust violations in the Flexible Slab Polyurethane Foam market.

82.   Defendants and their co-conspirators employed deceptive practices to conceal their conspiracy.  As a result of defendants' fraudulent concealment of the conspiracy, plaintiff asserts the tolling of the applicable statute of limitations affecting the causes of action by plaintiff and the members of the Class.

## CAUSE OF ACTION

### Violation of §1 of the Sherman Act

83.   Plaintiff incorporates and realleges each allegation set forth in the preceding paragraphs of this Complaint.

84.   Beginning at least as early as November 1, 2005 and continuing at least until the present, defendants and their co-conspirators, by and through their officers,

1  directors, employees, agents or other representatives, entered into a continuing

2  agreement, understanding and conspiracy in restraint of trade to artificially raise, fix,

3  maintain and/or stabilize prices for Flexible Slab Polyurethane Foam in the United

4  States in violation of §1 of the Sherman Act, 15 U.S.C. §1.

5       85.   Defendants' unlawful conduct resulted in artificially high prices charged

6  by defendants and their co-conspirators to plaintiff and the members of the Class for

7  Flexible Slab Polyurethane Foam.

8       86.   As a result of defendants' unlawful conduct, plaintiff and members of the

9  Class have paid and continue to pay more for Flexible Slab Polyurethane Foam than

10  they would have paid in a competitive marketplace.

11       87.   Plaintiff seeks to recover for these overcharge damages.

12       88.   As a direct and proximate result of defendants' scheme, plaintiff and

13  members of the Class have been injured and financially damaged in their respective

14  businesses and property, in amounts which are presently undetermined.  Plaintiff's

15  injuries consist of paying higher prices to purchase Polyurethane Foam than it would

16  have paid absent defendants' conduct.  Plaintiff's injuries are the type the antitrust

17  laws were designed to prevent and flow from defendants' unlawful conduct.

18  **PRAYER FOR RELIEF**

19       WHEREFORE, plaintiff, individually and on behalf of all members of the

20  Class, prays for a judgment:

21       A.   That the Court certify the Class pursuant to Federal Rules of Civil

22  Procedure, Rule 23(b);

23       B.   That the Court find that the combination and conspiracy and other illegal

24  activities alleged in this Complaint be adjudicated a per se violation of, or

25  alternatively, a rule of reason violation of §1 of the Sherman Act, 15 U.S.C. §1;

26       C.   That plaintiff and the Class recover damages against each defendant,

27  jointly and severally, in an amount to be trebled in accordance with the antitrust laws

28

1  pursuant to §1 of the Sherman Act, 15 U.S.C. §1 and §4(a) of the Clayton Act,

2  15 U.S.C. §15(a);

3      D.     That plaintiff and the Class be awarded their expenses and costs of suit,

4  including reasonable attorneys' fees, to the extent provided by law;

5      E.     That this Court permanently enjoin unlawful activity by defendants in

6  violation of the antitrust laws; and

7      F.     That plaintiff and the Class be awarded such additional relief as the Court

8  may deem proper.

9                              **JURY DEMAND**

10     Plaintiff demands a trial by jury.

11  DATED:  October 4, 2010                 ROBBINS GELLER RUDMAN
                                              & DOWD LLP
12                                          BONNY E. SWEENEY
                                            CARMEN A. MEDICI
13

14                                          _Bonny E. Sweeney_
15                                          BONNY E. SWEENEY

16                                          655 West Broadway, Suite 1900
                                            San Diego, CA  92101
17                                          Telephone: 619/231-1058
                                            619/231-7423 (fax)
18
                                            ROBBINS GELLER RUDMAN
19                                            & DOWD LLP
                                            SAMUEL H. RUDMAN
20                                          MARK S. REICH
                                            58 South Service Road, Suite 200
21                                          Melville, NY  11747
                                            Telephone: 631/367-7100
22                                          631/367-1173 (fax)

23  S:\CptDraft\Consumer\Cpt PolyFoam.doc   Attorneys for Plaintiff

24

25

26

27

28

Name & Address:

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| E. M. BROWN, INC., On Behalf of Itself and All Others Similarly Situated | CASE NUMBER |
|---|---|
| PLAINTIFF(S) | CV10 7437 CAS (RZx) |
| v. | |
| FUTURE FOAM, INC., HICKORY SPRINGS MANUFACTURING COMPANY, (See ATTACHMENT A) | SUMMONS |
| DEFENDANT(S). | |

TO:   DEFENDANT(S): _____

_____

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, Bonny E. Sweeney _____, whose address is Robbins Geller, et al., 655 West Broadway, Suite 1900, San Diego, CA 92101 _____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: OCT - 5 2010

By: _____

CHRISTOPHER POWERS

Deputy Clerk

(Seal of the Court)

SEAL

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                    SUMMONS

ATTACHMENT A

Defendants (cont.)

VALLE FOAM INDUSTRIES, INC., DOMFOAM INTERNATIONAL, INC., CARPENTER CO., WOODBRIDGE FOAM CORPORATION, FLEXIBLE FOAM PRODUCTS, INC., SCOTTDEL, INC., FXI FOAMEX INNOVATIONS, INC. and VITAFOAM, INC.

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself □)<br>E. M. BROWN, INC., On Behalf of Itself and All Others Similarly Situated | DEFENDANTS<br>FUTURE FOAM, INC., HICKORY SPRINGS MANUFACTURING COMPANY, VALLE FOAM INDUSTRIES, INC.,<br>(See ATTACHMENT A) |
|---|---|
| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br>Bonny E. Sweeney<br>Robbins Geller Rudman & Dowd LLP<br>655 West Broadway, Suite 1900, San Diego, CA 92101  619/231-1058 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes  ☐ No     ☐ MONEY DEMANDED IN COMPLAINT: $_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
COMPLAINT FOR VIOLATIONS OF §1 OF THE SHERMAN ACT; 15 U.S.C. §1

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus- Alien Detainee | | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

CV10 7437

FOR OFFICE USE ONLY:   Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)                    CIVIL COVER SHEET                    Page 1 of 2

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No ☑ Yes
If yes, list case number(s): 2:10-cv-06606-MMM(VBK)

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply) ☑ A. Arise from the same or closely related transactions, happenings, or events; or
  ☑ B. Call for determination of the same or substantially related or similar questions of law and fact; or
  ☑ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
  ☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | New York |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): *Barry G. Sweeney* Date October 4, 2010

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

ATTACHMENT A

Defendants (cont.)

DOMFOAM INTERNATIONAL, INC., CARPENTER CO., WOODBRIDGE FOAM
CORPORATION, FLEXIBLE FOAM PRODUCTS, INC., SCOTTDEL, INC., FXI FOAMEX
INNOVATIONS, INC. and VITAFOAM, INC.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Christina A. Snyder and the assigned discovery Magistrate Judge is Ralph Zarefsky.

The case number on all documents filed with the Court should read as follows:

### CV10- 7437 CAS (RZx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=====================================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[X] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[ ] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[ ] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.